UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JENNIFER NEWELL,

    Plaintiff,

v.

NORTHWOOD UNIVERSITY,

    Defendant.
_____/

Case No. 19-
Hon.

THE MASTROMARCO FIRM
VICTOR J. MASTROMARCO, JR. (P34564)
KEVIN J. KELLY (P74546)
Attorneys for Plaintiff
1024 N. Michigan Avenue
Saginaw, Michigan 48602
(989) 752-1414
vmastromar@aol.com
kkelly615@gmail.com
_____/

## PLAINTIFF'S COMPLAINT & DEMAND FOR TRIAL BY JURY

NOW COMES Plaintiff, JENNIFER NEWELL, by and through her attorneys, THE MASTROMARCO FIRM, and hereby complains against Northwood University, stating as follows:

### COMMON ALLEGATIONS

1. That Plaintiff is a resident of the County of Midland, State of Michigan and is otherwise domiciled in the State of Michigan.

2. That Defendant is a domestic nonprofit corporation located in the County of Midland, State of Michigan and is otherwise domiciled in the State of Michigan.

3. That the amount in controversy exceeds the sum of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00), exclusive of costs, interests, and attorney fees.

4. That this Honorable Court has jurisdiction over Plaintiff's federal law claims pursuant to 29 U.S.C. § 1331 and supplemental jurisdiction over Plaintiff's state law claims pursuant to 29 U.S.C. § 1367.

5. That Plaintiff is an African-American female.

6. That on or about March 13, 2000, Defendant hired Plaintiff to work as an admissions representative.

7. That over the next several years, Plaintiff performed her job duties in a satisfactory and/or an above-satisfactory manner.

8. That Plaintiff routinely received merit increases to her salary, which were based on performance.

9. That in point of fact, effective January 1, 2016, Plaintiff received a 2.0 percent merit increase.

10. That on or about September 12, 2016, Heidi Schall became Plaintiff's supervisor.

11.     That on or about December 5, 2016, Ms. Schall evaluated Plaintiff's performance as "[c]onsistently meets and often exceeds performance standards."

12.     That effective January 1, 2017, Plaintiff received a 2.75 percent merit increase.

13.     That on or about April 29, 2017, Plaintiff was involved in a motor vehicle accident, in which Plaintiff was rear-ended and suffered significant injuries.

14.     That during said accident, Plaintiff lost consciousness for an indeterminate amount of time.

15.     That as a result of the motor vehicle accident, Plaintiff suffered a mild traumatic brain injury with frequent headaches, vision problems, nausea, bouts of vomiting, and stuttering.

16.     That as a result of said injuries, Plaintiff took a leave of absence pursuant to the Family and Medical Leave Act.

17.     That while on leave and on or about July 1, 2017, Defendant began retaliating and discriminating against Plaintiff by relocating Plaintiff's office from her home office to Defendant's Michigan campus, specifically the Doan Building.

18.     That on or about August 21, 2017, Plaintiff returned to work on a reduced schedule.

19.     That on or about September 13, 2017, Plaintiff met with various

management level officials, including Ms. Schall, to discuss Plaintiff's options moving forward.

20. That Defendant provided Plaintiff with two options: (1) moving to a part-time position in Academics as a Front Desk Manager, which would become full-time when restrictions were lifted; or (2) apply for long-term disability with Aetna.

21. That Plaintiff refused to select either option.

22. That on or about September 14, 2017, Plaintiff provided Defendant with a return to work notice.

23. That on or about September 18, 2017, Plaintiff returned to work in her full-time admissions representative position.

24. That on or about September 22, 2017, Pamela Christie, Human Resources Director, sent Plaintiff a letter regarding her 2017-2018 appointment letter.

25. That said letter discussed the September 13, 2017 meeting, the options presented, and Plaintiff's return to work.

26. That the letter continued to threaten Plaintiff's employment, specifically referencing her FMLA leave, stating, "Please remember that since Family Medical Leave and the additional leave time have been exhausted, any deficiencies in performance will be open for performance review."

27. That following Plaintiff's return to work, Defendant continued efforts to retaliate and discriminate against Plaintiff, attacking her performance, which up until her FMLA leave had been viewed as above average.

28. That Defendant specifically began creating a paper trial of vague performance issues to make it appear falsely that Plaintiff was having performance issues.

29. That on or about November 22, 2017, Plaintiff underwent an independent medical examination, which specifically found that Plaintiff could "continue to perform her normal and unrestricted work activities."

30. That on or about November 27, 2017, Ms. Schall provided Plaintiff with her performance evaluation, which rated Plaintiff as "[s]ometimes meets performance standards."

31. That following said rating, Defendant continued to place Plaintiff on retaliatory and discriminatory performance improvement plans.

32. That effective January 1, 2018, Defendant gave Plaintiff a 0.50 percent merit increase.

33. That on or about March 16, 2018, Defendant continued to create a paper trail by issuing to Plaintiff a verbal warning.

34. That said verbal warning was allegedly issued due to Plaintiff not scheduling enough presentations per week and not booking her calendar

sufficiently in advance.

35. That throughout the months of 2018, Defendant continued to place Plaintiff on retaliatory and discriminatory improvement plans.

36. That on or about October 4, 2018, Defendant again issued Plaintiff discipline for allegedly not doing enough to ensure two students had sufficient ability to pay tuition.

37. That on or about October 22, 2018, Ms. Schall provided Plaintiff with her performance review, evaluating Plaintiff as [s]ometimes meets performance standards."

38. That effective January 1, 2019 and for the first time in years, Defendant did not provide Plaintiff with a merit increase.

39. That on or about May 8, 2019, Melissa DeBoer, one of Plaintiff's manager, met with Plaintiff and issued her a written warning for allegedly failing to attend a workshop.

40. That while Ms. DeBoer issued the discipline to Plaintiff, Plaintiff became very upset by the discriminatory and retaliatory manner in which she was being treated.

41. That Plaintiff stopped the meeting and reported to Ms. DeBoer that she was going to be speaking with the Human Resources Department.

42. That the discipline form given to Plaintiff provided it was only a

"written warning" and not a "discharge" and further stated that "[i]f there are any *further* incidents that do not meet the minimum expectations, further disciplinary action up to and including termination may occur." (emphasis added).

43. That Plaintiff later met with Ms. Christie and complained about the disparate treatment she was being subjected to.

44. That Plaintiff complained about the discriminatory and retaliatory treatment she was receiving.

45. That Ms. Christie informed Plaintiff that she would look into matters and follow-up with Plaintiff.

46. That on or about June 3, 2019, Ms. Christie and Lori Isenhart, Human Resources Manager, met with Plaintiff and informed her that her last day of employment would be June 3, 2019.

47. That Plaintiff had not engaged in any *further* incidents that did not meet minimum expectations; however, Plaintiff did complain to Ms. Christie and and sufficiently raised the spectre of discrimination and retaliation.

48. That Defendant terminated Plaintiff in retaliation for raising complaints of discrimination and/or coming forward with evidence of discrimination.

49. That Defendant's proffered reasons for the adverse employment action are pretextual in nature.

50. That Defendant's proffered reasons for the adverse employment action are either not based in fact, did not actually motivate the decision, and/or were too insignificant to justify the decision.

51. That Defendant's actions constitute retaliation in violation of the Family and Medical Leave Act.

52. That Defendant's actions constitute disability discrimination in violation of the Michigan Persons with Disabilities Civil Rights Act.

53. That Defendant's actions constitute race discrimination in violation of the Michigan Elliott-Larsen Civil Rights Act.

54. That as a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and will continue to suffer from economic damages, including, but not limited to, lost wages, back pay, front pay, pay increases, health, dental, vision, and/or life insurance benefits, short-term and long-term disability benefits, employer profit-sharing programs, bonuses, employer contributions, retirement benefits, and any other compensation and fringe benefits lost to Plaintiff along with an additional amount to offset any negative tax consequences incurred as result of recovery.

55. That as a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered and will continue to suffer non-economic damages, including, but not limited to, emotional distress, mental anguish, shock, fright,

embarrassment, humiliation, nervousness, anxiety, depression, disruption of lifestyle, and denial of social pleasures.

56. That pursuant to 29 U.S.C. § 2617, Plaintiff hereby makes a claim for the following elements of damages, directly and proximately caused by Defendant's unlawful actions:

 (a) Any wages, salary, employee benefits, or other compensation denied or lost to Plaintiff by reason of Defendant's violations of the FMLA;

 (b) The interest on said wages, salary, employee benefits, and other compensation at the prevailing rate;

 (c) An additional amount as liquidated damages equal to the above two (2) sums;

 (d) Reasonable attorney fees, reasonable expert witness fees, and other costs of this action; and

 (e) Any such equitable relief as may be appropriate.

57. That Plaintiff hereby claims reasonable attorney fees pursuant to MCL § 37.1606.

58. That Plaintiff hereby claims the costs of litigation, including reasonable attorney fees and witness fees, pursuant to MCL § 37.2801 and MCL § 37.2802.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) in addition to costs, interest, and attorney

THE MASTROMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

fees along with any and all legal and/or equitable relief this Court deems just.

## COUNT I – RETALIATION IN VIOLATION OF THE FAMILY & MEDICAL LEAVE ACT

59. That Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 58 of her Common Allegations, word for word and paragraph for paragraph, as if fully restated herein.

60. That Congress enacted the Family and Medical Leave Act, finding that "there is inadequate job security for employees who have serious health conditions that prevent them from working for temporary periods." 29 U.S.C. § 2601(a)(4).

61. That as such, the FMLA entitles eligible employees to take up to twelve weeks of leave during a twelve month period if the employee has a serious health condition that prevents the employee from performing the functions of her job. 29 U.S.C. § 2612(a)(1)(D); *Hunter v. Valley View Local Schs.*, 579 F.3d 688, 690 (6th Cir. 2009).

62. That the FMLA prohibits an employer from discriminating or retaliating against an employee for having exercised or attempted to exercise FMLA rights. 29 C.F.R. § 825.220(c); 29 U.S.C. § 2615(a)(1)-(2).

63. That at all times material hereto, Defendant was and is a covered employer as defined by the FMLA and the applicable federal regulations. 29 C.F.R. § 825.104.

64. That at all times material hereto, Plaintiff was an eligible employee as defined by the FMLA and the applicable federal regulations and was otherwise entitled to take FMLA leave. 29 C.F.R. § 825.110.

65. That at all times material hereto, Plaintiff suffered from a "serious medical condition" as defined by the FMLA and the applicable federal regulations. 29 C.F.R. § 825.113; 29 C.F.R. § 825.115.

66. That Plaintiff engaged in activity protected by the FMLA by requesting and taking FMLA-qualifying leave. *See Bryant v. Dollar General Corp.*, 538 F.3d 394 (6th Cir. 2008).

67. That Defendant took materially adverse employment action against Plaintiff, including, but not limited to, terminating Plaintiff's employment.

68. That a causal connection exists between Plaintiff's protected activity and the adverse employment action.

69. That the adverse employment action taken by Defendant would not have occurred in the absence of Plaintiff's protected activity.

70. That the adverse action taken by Defendant resulted from Plaintiff's protected activity.

71. That Defendant's proffered reasons for the adverse employment action are pretextual in nature.

72. That Defendant's proffered reasons for the adverse employment

action are either not based in fact, did not actually motivate the decision, and/or were too insignificant to justify the decision.

73. That Defendant's actions constitute retaliation in violation of the Family and Medical Leave Act.

74. That pursuant to 29 U.S.C. § 2617, Plaintiff hereby makes a claim for the following elements of damages, directly and proximately caused by Defendant's unlawful actions:

(a) Any wages, salary, employee benefits, or other compensation denied or lost to Plaintiff by reason of Defendant's violations of the FMLA;

(b) The interest on said wages, salary, employee benefits, and other compensation at the prevailing rate;

(c) An additional amount as liquidated damages equal to the above two (2) sums;

(d) Reasonable attorney fees, reasonable expert witness fees, and other costs of this action; and

(e) Any such equitable relief as may be appropriate.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) in addition to costs, interest, and attorney fees along with any and all legal and/or equitable relief this Court deems just.

THE MASTROMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

## COUNT II – DISABILITY DISCRIMINATION IN VIOLATION OF THE MICHIGAN PERSONS WITH DISABILITIES CIVIL RIGHTS ACT

75. That Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 58 of her Common Allegations and paragraphs 59 through 74 of Count I, word for word and paragraph for paragraph, as if fully restated herein.

76. That the Michigan Persons with Disabilities Civil Rights Act declares that the opportunity to obtain employment without discrimination because of a disability is a civil right. MCL § 37.1102(1).

77. That at all times material hereto, Plaintiff had a medical condition that satisfied the definition of a "disability" as set forth in the Act. MCL § 37.1103(d).

78. That at all times material hereto, Plaintiff suffered from a traumatic brain injury ("TBI").

79. That at all times material hereto, Plaintiff's TBI substantially limited on or more major life activities and was unrelated to Plaintiff's ability to perform the duties of her job. MCL § 37.1103(d)(*i*)(A).

80. That at all times material hereto, with or without accommodation, Plaintiff's disability did not prevent Plaintiff from performing the duties of her position.

81. That Defendant discriminated against Plaintiff in one or more of the ways prohibited by the Act.

THE MASTROMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

82. That the Act prohibits an employer from discharging or otherwise discriminating against an individual with respect to compensation or the terms, conditions, or privileges of employment, because of a disability that is unrelated to the individual's ability to perform the duties of a particular job. MCL § 37.1202(1)(b).

83. That Defendant discriminated against Plaintiff by discharging her from employment and otherwise discriminated against her on the basis of her disability.

84. That Defendant's proffered reasons for the adverse employment action are pretextual in nature.

85. That Defendant's proffered reasons for the adverse employment action are either not based in fact, did not actually motivate the decision, and/or were too insignificant to justify the decision.

86. That Defendant's actions constitute disability discrimination in violation of the Michigan Persons with Disabilities Civil Rights Act.

87. That as a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and will continue to suffer from economic damages, including, but not limited to, lost wages, back pay, front pay, pay increases, health, dental, vision, and/or life insurance benefits, short-term and long-term disability benefits, employer profit-sharing programs, bonuses, employer contributions,

retirement benefits, and any other compensation and fringe benefits lost to Plaintiff along with an additional amount to offset any negative tax consequences incurred as result of recovery.

88. That as a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered and will continue to suffer non-economic damages, including, but not limited to, emotional distress, mental anguish, shock, fright, embarrassment, humiliation, nervousness, anxiety, depression, disruption of lifestyle, and denial of social pleasures.

89. That Plaintiff hereby claims reasonable attorney fees pursuant to MCL § 37.1606.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) in addition to costs, interest, and attorney fees along with any and all legal and/or equitable relief this Court deems just.

## COUNT III – RACE DISCRIMINATION IN VIOLATION OF THE MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT

90. That Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 57 of her Common Allegations, paragraphs 58 through 73 of Count I, and paragraphs 74 through 88 of Count II, word for word and paragraph for paragraph, as if fully restated herein.

91. That the Michigan Elliott-Larsen Civil Rights Act makes it unlawful

for an employer to discharge or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of race. MCL § 37.2202(1)(a).

92. That at all times material hereto, Defendant was Plaintiff's "employer" as defined by the Act. MCL § 37.2201(a).

93. That Plaintiff was and is a member of a protected class by virtue of her race, African-American.

94. That at all times material hereto, Plaintiff was and is qualified for the position she held.

95. That Plaintiff suffered an adverse employment action by virtue of Defendant's termination of her employment.

96. That Plaintiff suffered said adverse employment action under circumstances that give rise to an inference of race discrimination.

97. That Defendant treated similarly-situated employees that are outside of Plaintiff's protected class in a more favorable manner and/or Defendant replaced Plaintiff with an employee that is outside of her protected class.

98. That Defendant's proffered reasons for the adverse employment action are pretextual in nature.

99. That Defendant's proffered reasons for the adverse employment action are either not based in fact, did not actually motivate the decision, and/or

were too insignificant to justify the decision.

100. That Defendant's actions constitute race discrimination in violation of the Michigan Elliott-Larsen Civil Rights Act.

101. That as a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and will continue to suffer from economic damages, including, but not limited to, lost wages, back pay, front pay, pay increases, health, dental, vision, and/or life insurance benefits, short-term and long-term disability benefits, employer profit-sharing programs, bonuses, employer contributions, retirement benefits, and any other compensation and fringe benefits lost to Plaintiff along with an additional amount to offset any negative tax consequences incurred as result of recovery.

102. That as a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered and will continue to suffer non-economic damages, including, but not limited to, emotional distress, mental anguish, shock, fright, embarrassment, humiliation, nervousness, anxiety, depression, disruption of lifestyle, and denial of social pleasures.

103. That Plaintiff hereby claims the costs of litigation, including reasonable attorney fees and witness fees, pursuant to MCL § 37.2801 and MCL § 37.2802.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court

enter judgment in her favor in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) in addition to costs, interest, and attorney fees along with any and all legal and/or equitable relief this Court deems just.

Respectfully submitted,
THE MASTROMARCO FIRM

Dated: July 12, 2019    By:   /s/ Victor J. Mastromarco, Jr.
VICTOR J. MASTROMARCO, JR. (P34564)
KEVIN J. KELLY (P74546)
Attorneys for Plaintiff
1024 N. Michigan Avenue
Saginaw, Michigan 48602
(989) 752-1414
vmastromar@aol.com

## **DEMAND FOR TRIAL BY JURY**

NOW COMES Plaintiff, JENNIFER NEWELL, by and through her attorneys, THE MASTROMARCO FIRM, and hereby demands a trial by jury on all of the above issues, unless otherwise expressly waived.

                                                    Respectfully submitted,
                                                    THE MASTROMARCO FIRM

Dated: July **, 2019        By:   */s/ Victor J. Mastromarco, Jr.*
                                                         VICTOR J. MASTROMARCO, JR. (P34564)
                                                         KEVIN J. KELLY (P74546)
                                                         Attorneys for Plaintiff
                                                         1024 N. Michigan Avenue
                                                         Saginaw, Michigan 48602
                                                         (989) 752-1414
                                                         vmastromar@aol.com